CLINTON GRIGGS, AN INFANT BY HIS GUARDIAN AD LITEM, SUMMER GRIGGS AND SUMMER GRIGGS, INDIVIDUALLY, PLAINTIFFS, v. WILLIAM BERTRAM, DEFENDANT AND THIRD PARTY PLAINTIFF-RESPONDENT, AND BOARD OF EDUCATION OF MONROE TOWNSHIP, AND MONROE TOWN-SHIP (POLICE DEPARTMENT), DEFENDANTS, v. THE FRANKLIN MUTUAL INSURANCE COMPANY, THIRD PARTY DEFENDANT-APPELLANT.

Argued September 21, 1981—Decided February 22, 1982.

348

*Bernard F. Boglioli* argued the cause for appellant (*Boglioli & Stein*, attorneys; *Lawrence S. Reynolds*, on the brief).

*Edward K. Zuckerman* argued the cause for respondent (*Pincus, Gordon & Zuckerman*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

William Bertram, a teenaged boy, became involved in a fight with another minor, Clinton Griggs. Anticipating the possibility of a claim, Bertram promptly notified his insurance carrier of the incident. Some months later such a claim was made and turned over to the carrier. Over a year later a personal injury suit was started by Griggs against Bertram and the formal complaint was referred to the insurance carrier. Only after receiving the complaint, did the insurer first advise its insured there was no coverage because the claim involved an intentional tort excluded under the policy. The insurer waited to disclaim despite its earlier awareness that the injuries were sustained in a fight and that the resultant claim against its insured might not be covered under the policy. Bertram then assumed respon-

sibility for his own defense against Griggs' action and also filed a third-party action against the insurer, asserting that the carrier was estopped from denying coverage because of the delay in disclaiming liability. Following a settlement of the personal injury action, Bertram also sought recovery from the carrier for the amount settled, which the carrier refused. These claims, relating to estoppel and the enforceability of the settlement, constitute the major issues on the present appeal.

The underlying facts are relatively simple. The fight between Bertram and Griggs occurred on May 4, 1974 while both were attending a basketball game at Monroe Township School No. 4. As they were leaving the game, Griggs pushed a friend of Bertram and the two exchanged some fighting words and blows. There is no clear indication from the record as to the nature and extent of the injuries to Griggs. Shortly after this incident, Bertram gave his insurance carrier, Franklin Mutual Insurance Company (Franklin Mutual), notice of a possible claim. During August 1974, Franklin Mutual sent an investigator to interview Bertram, who admitted that he had punched Griggs twice. Thereafter, Griggs made an actual claim for personal injuries, which claim Bertram forwarded to Franklin Mutual on December 4, 1974. At no time after learning of the incident did Franklin Mutual seek or interview other witnesses, nor did it make any efforts to obtain a physical examination of Griggs. Moreover, Franklin Mutual gave no indication that any potential claim or legal action arising from this incident would not be covered under the policy or that it would disclaim coverage in the event such a claim or action were brought.

In January 1976, approximately 17 months after Franklin Mutual had first investigated the claim, Bertram was served with a summons and complaint filed by Griggs for his personal injuries.[1] Upon its receipt, Bertram promptly forwarded the

---

[1]The complaint did not specifically allege an intentional tort; it alleged damages "by the negligence and carelessness of the defendant William Ber-

complaint to Franklin Mutual, which, on February 23, 1976, disclaimed coverage, relying on the intentional tort exclusion in the insurance policy. Bertram hired his own attorney and filed an answer to Griggs' complaint. Bertram also initiated a third-party action against Franklin Mutual seeking to hold the carrier responsible under the insurance policy. Thereafter Franklin Mutual sent letters to Bertram's attorney requesting it be kept informed of the status of the original action, including the scheduling of any physical examination or deposition of Griggs.

Before trial of the personal injury action, Griggs and Bertram arrived at a settlement following negotiations in which Franklin Mutual did not participate. The settlement provided that a judgment in the amount of $9,000 would be entered in favor of Griggs. Griggs agreed not to enforce this judgment against Bertram, who assigned to Griggs his interest in the third party action, which the latter agreed to pursue against Franklin Mutual as the exclusive means of satisfying the judgment. Further, Griggs agreed to furnish a warrant of satisfaction of the judgment entered against Bertram, regardless of the outcome of the third-party action. A consent judgment based on this agreement was entered.

At the trial of the third-party complaint, Bertram admitted that he had committed an intentional tort and conceded that his claim was not covered by the terms of the insurance policy. Nevertheless, the trial court held that Franklin Mutual was liable. 163 *N.J.Super.* 87 (Law Div. 1978). The court determined that the carrier's failure to notify Bertram promptly of its intention to disclaim estopped it from denying coverage. It also ruled that, in order to avoid paying the amount of the consent judgment against Bertram, Franklin Mutual had the

---

tram during the course of an altercation," although, elsewhere the complaint alleged that Griggs "was wrongfully assaulted" by Bertram. The Monroe Township Board of Education and Monroe Township were also named as defendants. They were dismissed from the action on a motion for summary judgment.

burden of showing that the settlement between Griggs and Bertram was unreasonable. After holding another hearing, the trial court found that Franklin Mutual had failed to sustain this burden of proof. Accordingly, the court entered a judgment in favor of Bertram in the amount of $9,000, payable to Griggs, and $2,185 for counsel fees and costs. Franklin Mutual's motion for a new trial was denied and it appealed to the Appellate Division, which affirmed substantially for the reasons set forth by the trial court. 175 *N.J.Super.* 501 (1980). Franklin Mutual then successfully petitioned this Court for certification. 85 *N.J.* 476 (1980).

I

The principal issue in this case is whether the insurance carrier, having failed for a substantial period of time to notify its insured of the possibility of noncoverage, was estopped to deny coverage of the claim against its insured.[2] The trial court acknowledged that Franklin Mutual had a right under the policy to disclaim coverage, as recognized by the case of *Burd v. Sussex Mutual Ins. Co.*, 56 *N.J.* 383 (1970). However, according to the court, the carrier failed in its duty promptly to notify the insured of its disclaimer so that he could undertake his own investigation and preparation. 163 *N.J.Super.* at 93–94. The court also determined that under New Jersey case law, given the "equitable nature of estoppel, actual prejudice is presumed and need not be proven by the insured." *Id.* Consequently, the court ruled that Franklin Mutual was estopped from availing itself of any of the terms of the policy. *Id.* at 95.

Under certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a

[2]The provision of the insurance policy excluding coverage reads as follows: This policy does not apply: 1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others: * * * f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.

particular claim against its insured despite a clear contractual provision excluding the claim from the coverage of the policy. The strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a lawsuit based upon a claim against its insured. If it does so with knowledge of facts that are relevant to a policy defense or to a basis for noncoverage of the claim, without a valid reservation of rights to deny coverage at a later time, it is estopped from later denying coverage. *Merchants Indemnity Corp. v. Eggleston*, 37 *N.J.* 114, 127–129 (1962); *O'Dowd v. United States Fidelity & Guaranty Co.*, 117 *N.J.L.* 444, 451–452 (E. & A. 1937); *cf. Sussex Mutual Ins. Co. v. Hala Cleaners, Inc.*, 75 *N.J.* 117, 125 (1977) (estoppel not raised where insured was well aware of dispute over coverage notwithstanding insurer's taking legal action for benefit of insured as well as itself).

The rationale behind estoppel in this context is that once the insurer has acknowledged the claim and assumes control of the defense, the insured is justified in relying upon the carrier to protect it under its policy and to be responsible for any judgment against it. See *Eggleston, supra*, 37 *N.J.* at 127. The insured's justifiable reliance arises from the insurer's contractual right to control the defense under the policy. In assuming this contractual right of control, the insurer preempts its insured from defending itself. If the insurer could later repudiate its responsibility and ultimate liability under the policy, it would in effect have left its insured defenseless or seriously hampered in its ability to protect itself. That resultant inequity is a necessary ingredient of an estoppel.

The same reasoning has impelled the conclusion that a carrier may be estopped if it assumes control of a case prior to the filing of a complaint with knowledge of facts on which to disclaim coverage but without any reservation of the right later to do so. *Sneed v. Concord Ins. Co.*, 98 *N.J.Super.* 306, 320 (App.Div.1967); *Hanover Ins. Group v. Cameron*, 122 *N.J.Super.* 51, 65–66 (Ch. Div.1973). In each of these situations—the control of a case

before litigation and the assumption of a defense after litigation—the conduct of the insurer forecloses independent or parallel action by the insured to defend itself. In either situation the insured is effectively precluded from acting in its own interest under the policy. Hence, an estoppel properly bars the carrier from later asserting it had no responsibility to protect the insured under the policy.

The specific issue in this appeal is whether these principles of estoppel apply where the insurer has neither assumed the actual control of a case nor undertaken the preparation of any defense on behalf of the insured, but instead has failed for an unreasonable period of time to inform its insured of the possibility of a disclaimer of coverage, notwithstanding the insurer's early notification of a possible claim and awareness of grounds for disclaimer.

■ Upon the receipt from its insured of a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy. See *Bonnet v. Stewart*, 68 *N.J.* 287, 296–297 (1975); *Jones v. Continental Casualty Co.*, 123 *N.J.Super.* 353, 357 (Ch.Div.1973). But once an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned. See *Eggleston,* 37 *N.J.* at 131; *Bonnet,* 68 *N.J.* at 297; *Sneed,* 98 *N.J.Super.* at 320; *Ebert v. Balter,* 83 *N.J.Super.* 545 (Law Div.1964).

■ Unreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy. *Cf. Bonnett, supra* (while the Court spoke in terms of insurer's "retention of control of the investigation and defense of the negligence claim," there was no defense actually

undertaken; nonetheless, the Court held that *Eggleston* principles of estoppel were potentially applicable where there was a disclaimer only four months after receiving the summons and complaint from insureds). See *Security Ins. Co. of New Haven v. White*, 236 *F*.2d 215, 219 (10 Cir. 1956); *Bouchard v. Travelers Indemnity Co.*, 28 *Conn.Sup.* 122, 253 *A*.2d 497 (1969); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks*, 179 *Neb.* 642, 139 *N.W*.2d 821, 828–829 (1966). However, Franklin Mutual argues that in this case an estoppel should not arise because the insured has shown no prejudice as a result of any delay in its disclaimer of coverage.

In *Eggleston*, this Court stated that "undoubtedly prejudice is an essential ingredient" of estoppel. 37 *N.J.* at 129. The Court there recognized, however, that "prejudice is inevitable when the insured is denied the right to maintain complete control of the defense of the damage action." *Id.* It also observed that "some courts speak of a 'conclusive' presumption of prejudice, doubtless because, since the course cannot be rerun, they believe it futile to attempt to prove or to disprove that the insured would have fared better on his own." *Id.* Reviewing previous New Jersey decisions, the *Eggleston* Court found that prejudice is presumed as a matter of law where a carrier has undertaken to defend a damage suit. *Id.*

As noted, the trial court in this case concluded, on the authority of *Eggleston*, that "actual prejudice is presumed and need not be proven by the insured," and that the *Eggleston* rule was applicable against Franklin Mutual. 163 *N.J.Super.* at 94. However, the *Eggleston* Court itself noted the existence of a case, *Reliable Newspaper Delivery, Inc. v. Maryland Casualty Co.*, 131 *N.J.L.* 424 (E. & A. 1944), in which, though the carrier had disclaimed some ten months after the accident and the damage suit was not brought until about one year after the disclaimer, a divided court nonetheless found that "there was no evidence of prejudice and hence no estoppel." 37 *N.J.* at 130. The *Eggleston* Court attributed this decision to the distinction between investigation and defense of a suit, and left open the

question whether the distinction has any bearing on the question of prejudice. *Id.*

This distinction, as it related to the question of prejudice, was narrowed considerably in *Sneed v. Concord Ins. Co.*, 98 *N.J.Super.* 306 (App.Div.1967). The Appellate Division observed that the reasons for a presumption of prejudice when an insurer controls the defense after institution of an action also apply to the control of a claim before suit is filed. The Appellate Division believed that the difference between control before and after an action is instituted is "one of degree of invasion of the insured's rights, not of kind [and that a]ny invasion, if substantial, should suffice without the need for particularized establishment of prejudice." 98 *N.J.Super.* at 319. It further emphasized that the insurer's maintenance of control during the period of time immediately after the incident is critical since relevant evidence may become faded or lost by the passage of time. *Id.*

The question posed in the instant matter is whether the imputation of prejudice, found in *Sneed* to be justified when an insurer assumes control of the claim under the policy, is also appropriate in the situation where the insurer has not actually controlled the case. Thus, the question is whether prejudice can be imputed where, as here, an insurer receives timely notice of the possibility of a claim, is entitled to avail itself of its contractual right to investigate the incident, learns of a basis for disclaimer, and does not alert its insured as to potential noncoverage until after a legal action is actually brought. If this kind of conduct by an insurer can be said to constitute a material encroachment upon the rights of an insured to protect itself by handling the claim directly and independently of the insurer, then prejudice to those rights should be presumed.

The invasion of the insured's rights in this situation are not hypothetical. In this case, for example, the insured was under a policy duty to "cooperate" with the carrier in the conduct of suits and in the "securing and giving [of] evidence," and to refrain from "voluntarily ... assum[ing] any obligation."

Obviously the insured must avoid independent action which will contravene any of the essential terms of the policy; compliance with such provisions is a condition precedent to recovery under the policy and their breach can cause a forfeiture of coverage. *Kindervater v. Motorists Casualty Ins. Co.*, 120 *N.J.L.* 373, 375 (E. & A. 1938) (breach of the covenants to cooperate and not to "voluntarily assume any liability . . . or interfere in any negotiations for settlement or legal proceedings" operates "as an avoidance of the insurer's contractual liability.") In this setting, an insured cannot take any meaningful steps toward an early settlement of the claim without risking loss of coverage pursuant to the provision prohibiting it from voluntarily compromising liability or independently settling the claim. *Id.* Further, an insured who undertakes its own investigation of the incident or endeavors to prepare a defense to a claim can potentially interfere with the insurer's paramount right to control the case and may thereby be exposed to a later charge by the insurer of a breach of the policy provisions regarding the duty to cooperate. *Whittle v. Associated Indemnity Corp.*, 130 *N.J.L.* 576, 580–581 (E. & A. 1943); *Pearl Assur. Co., Ltd. v. Watts*, 58 *N.J.Super.* 483, 484, 490–491 (App.Div.1959); *Travelers & General Ins. Co. v. Rudco Oil & Gas Co.*, 129 *F.*2d 621, 626 (10 Cir. 1942).

These obligations upon the insured to turn over claims promptly, to abstain from any conduct that might interfere with the contractual rights of the insurer and to affirmatively cooperate with the insurance carrier, in turn, impose commensurate duties upon the insurer. Upon receiving notice of a possible claim against its insured, an insurer has the duty to investigate the matter within a reasonable time. "[C]onsiderations of good faith and fair dealing require that the insurer make * * * investigation[s] [of any claim] within a reasonable time." *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 *N.J.* 63, 73 (1976). See also *Ebert v. Balter, supra.*

The insurer's obligation to deal in good faith also includes a "duty of fair and full disclosure between the insured

and his insurer," *Yeomans v. All State Ins. Co.*, 121 *N.J.Super.* 96, 102 (Law Div.1972), aff'd 130 *N.J.Super.* 48 (App.Div.1974). See generally Keeton, "Insurance Law Rights," 83 *Harv.L.Rev.* 961, 965 (1970). This duty necessarily requires that an insurer communicate to the insured in a timely fashion the results of any investigation. *Cf. Bollinger v. Nuss*, 449 *P.2d* 502, 512 (Kan.1969) (a duty is imposed on the carrier to communicate to the insured the results of any investigation indicating liability in excess of policy limits so that he may take proper steps to protect his own interests). Such disclosure is especially important where the results of an investigation reveal a conflict between the interests of the insured and its insurer. *Cf. Board of Ed. of Bor. of Chatham v. Lumbermens Mut. Cas. Co.*, 293 *F.Supp.* 541, 544 (D.N.J.1968), aff'd 419 *F.2d* 837 (3 Cir. 1969) ("when a conflict of interest arises between the insurer as agent and its insured as principal, the insurer's conduct will be subject to closer scrutiny than that of the ordinary agent because of the adverse interest.") Failure to give prompt notice of such a conflict, or potential conflict, is inconsistent with the overriding fiduciary duty of an insurer to deal with an insured fairly and candidly so that the insured can, if necessary, protect itself. *Yeomans, supra.* See *Herges v. Western Casualty and Surety Company*, 408 *F.2d* 1157, 1162 n.7 (8 Cir. 1969); *Tannerfors v. American Fidelity Fire Insurance Co.*, 397 *F.Supp.* 141, 147 (D.N.J.1975), aff'd 535 *F.2d* 1247 (3 Cir. 1976).

In this case a period of 18 months elapsed between the notice of the incident and possible claim and the attempted disclaimer by the insurance carrier. Shortly after the initial occurrence the carrier was alerted to sufficient facts to cause it to question or possibly reject coverage under the policy. Yet it chose to say absolutely nothing to its insured as to the applicability and availability of insurance protection under the policy. Clearly the insurer failed in its duty promptly to notify its insured of the results of its investigation—that the claim was not, or might not be, covered by the terms of the policy.

▓▓ Even where the insurer has done nothing after notification of a claim and has not otherwise assumed control of the case, the insurer, as we have noted, has the exclusive right under the policy to control the claim and to effectively deter the insured from taking any action that will interfere with the insurer's right to control the matter. In the absence of any conduct by the insurance carrier that is inconsistent with, or is clearly indicative of a repudiation of, its contractual rights, the insured is justified in believing the insurer is vigorously exercising these rights in a manner which will fully protect the insured's interest under the policy. The insurance policy itself, with the implied but compelling fiduciary duty to deal fairly, effectively and in good faith with the insured, generates this reasonable expectation.

▓▓ The insured's reasonable expectation of protection of its interests by the insurer can, of course, be dispelled by timely notice from the insurance carrier of a possible disclaimer of coverage. Where, however, there has been a long lapse of time without any indication by the insurance carrier of a loss or rejection of coverage, during which the insured justifiably expects to be protected by the carrier and cannot, except at the risk of forfeiting coverage, act for itself under the policy, there is a realistic restraint upon the insured's contractual freedom of action and a significant incursion upon its legitimate, protectable interests. *Sneed.* It would be speculative, unproductive and unfair to try to surmise or recreate what avenues the insured might otherwise have pursued in such a situation if it had had a clear field to act on its own during the time the matter is preempted by the carrier. That "course cannot be rerun." *Eggleston.* These circumstances justify the imputation of prejudice sufficient to raise an estoppel against the insurer.[3]

---

[3]We recognize, of course, that there are many variables that usually must coalesce to raise an estoppel based upon a conclusive presumption of prejudice to the rights of the insured. There may be other situations, involving, for example, a short delay before the insurer discloses its intentions regarding

■ Finally, Franklin Mutual contends that its conduct should not be the basis of an estoppel because in refusing to defend it followed the procedure outlined in *Burd v. Sussex Mutual Ins. Co.*, 56 *N.J.* 383, 390–394 (1970).[4]

In *Burd*, this Court suggested the procedures to be followed by insurers in cases potentially involving an intentional tort excluded from coverage. Because an insurer's interest in defending such a suit often conflicts with the interests of the insured, and the main action usually does not resolve the issue of coverage, the Court stated that the carrier could settle the coverage issue in a declaratory judgment action before or after the main action, 56 *N.J.* at 390–391, or in a proceeding on the policy by the insureds, *id.* at 394. In this case, however, the dereliction of the insurance carrier inheres in its failure to raise the coverage question promptly. If it had done so, a dispute over coverage could have been handled under the *Burd* guidelines.

■ We therefore conclude that where, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later

coverage which may not call for the conclusive imputation of prejudice. We note, without attempting to fashion a more complete determination, that it. may be appropriate in such other contexts not to impute conclusive prejudice but to impose a rebuttable presumption of prejudice which the insurer must disprove in order to overcome the bar of estoppel.

[4]Franklin Mutual also intimates that creating coverage for an admitted intentional tort violates the public policy against such coverage. See *Malanga v. Manufacturer's Casualty Ins. Co.*, 28 *N.J.* 220, 225 (1958). We find no merit in this position because coverage of an intentional tort by estoppel arises for reasons not related to the tort itself. Hence, an estoppel in these circumstances does not violate public policy by encouraging intentional torts. *Tomerlin v. Canadian Indemnity Co.*, 61 *Cal.*2d 638, 394 *P.*2d 571, 577–578, 39 *Cal.Rptr.* 731, 737 (1964).

denying coverage under the insurance policy in the event a legal action is subsequently brought against its insured.

## II

The remaining issue is whether Franklin Mutual is responsible under the policy for the payment of the settlement between Griggs and Bertram since it did not participate in the settlement negotiations. The "no action" provision of the insurance policy prohibits recovery unless there is a settlement entered into with the insurance carrier's participation or a judgment following an actual trial.[5]

This Court has stated:

> Where an insurer wrongfully refused coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him. The only qualifications to this rule are that the amount paid in settlement be reasonable and that the payment be made in good faith. [*Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 *N.J.* at 71, quoting *N.J. Mfgrs. Ind. Ins. Co. v. United States Cas. Co.*, 91 *N.J.Super.* 404, 407–408 (App.Div.1966)]

Here, although the personal injury action between Griggs and Bertram was not one later found to be covered by the policy, an insurer that is estopped on equitable grounds from denying policy coverage should have no greater advantage vis-a-vis its insured than an insurer that is directly liable under the terms of its policy. We conclude that since Franklin Mutual is estopped from denying coverage under the policy, it is similarly estopped from insisting on compliance with the "no action" provision of the policy.

---

[5]The provision stated:

Suit Against this Company: a. No suit or action shall lie against this Company, unless: (1) as a condition precedent thereto there has been full compliance with all of the provisions and stipulations of this policy, and (2) the amount of the Insured's obligation to pay has been finally determined: (a) by judgment against the Insured after actual trial; or (b) by written agreement of the Insured, the claimant and this Company.

██ Franklin Mutual further contends that notwithstanding an estoppel against invoking the "no action" provision of the policy, the settlement between Bertram and Griggs is unenforceable because it was unreasonable and negotiated in bad faith. The carrier relies upon the principle that an insurer who wrongfully refuses to defend is liable only for a reasonable and good faith settlement made by its insured. *E.g., Fireman's Fund,* 72 *N.J.* at 73.

With respect to this contention the trial court held that an insurer has the burden of demonstrating the unreasonable nature of a settlement. 163 *N.J.Super.* at 96. The court explained that imposing the burden on a policyholder would "negate the policy enunciated by our courts of permitting a policyholder to settle his claim and seek reimbursement from his insurance company" and, also, "would discourage settlement so necessary to the orderly disposition of cases." *Id.* The Appellate Division agreed and declined to impose on an insured "a presumption of unreasonableness at the behest of an insurance company which voluntarily removed itself from the fray." 175 *N.J.Super.* at 502–503.

Most courts that have considered this issue have held that a settlement is presumptive evidence of the liability of the insured and the amount of damages, and that the insurer has the burden of rebutting this presumption by showing that the settlement was unreasonable or in bad faith. *E.g., St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.,* 201 *U.S.* 173, 182, 26 *S.Ct.* 400, 403, 50 *L.Ed.* 712, 717 (1906); *Boutwell v. Employers' Liability Assurance Corp.,* 175 *F.2d* 597, 601 (5 Cir. 1949); *Kershaw v. Maryland Casualty Co.,* 172 *Cal.App.2d* 248, 256–257, 342 *P.2d* 72, 78 (1959); *Missionaries of Co. Mary, Inc. v. Aetna Cas. & S. Co.,* 155 *Conn.* 104, 230 *A.2d* 21, 26 (1967); *Elliott v. Casualty Association of America,* 254 *Mich.* 282, 236 *N.W.* 782, 783–784 (1931); *Butler Brothers v. American Fidelity Co.,* 120 *Minn.* 157, 139 *N.W.* 355, 359 (1913); *Brinkman v. Western Automobile Indemnity Association,* 205 *Mo.App.* 71, 218 *S.W.* 944, 945–46 (1920); *Mitchell v. Lindstrom,* 12 *App.Div.2d* 813,

209 *N.Y.S.2d* 923, 927, motion for leave to appeal den., 9 *N.Y.2d* 613, 217 *N.Y.S.2d* 1025, 176 *N.E.2d* 407 (1961). This rule is consistent with the general assumption that in the absence of contrary evidence, persons act fairly, honestly, and in good faith. See *In re Las Colinas, Inc.*, 294 *F.Supp.* 582, 598 (D.P.R.1968), vacated on other grounds, 426 *F.2d* 1005 (1 Cir. 1970); *Salley Grocer Co. v. Hartford Accident & Indemnity Co.*, 223 *So.2d* 5, 8 (La.App.1969); *Pulliam v. Bond*, 406 *S.W.2d* 635, 643 (Mo.1966); 29 *Am.Jur.2d*, Evidence § 168 (1967); *cf. Chasan v. Kolb*, 1 *N.J.Super.* 66, 67 (App.Div.1948), aff'd 2 *N.J.* 263 (1949) (collusion and fraud are not presumed).

Under the circumstances of the present case, we are not persuaded by the majority rule, which would cast the entire burden of proof—the burden of production and the burden of persuasion—on one party, namely, the insurer. Since we are dealing with liability that results from and is based upon an equitable doctrine, estoppel, the consequences that flow from the application of the doctrine should be governed by its equitable principles. It is therefore appropriate to determine what is fair and sensible under all the circumstances in imposing and allocating the burden of proof of the reasonableness and good faith of the settlement as conditions for its enforceability against the insurer.

In approaching the inquiry, great weight must be placed upon the character of an insurance policy as a contract of adhesion. See *Cooper v. Government Employees Ins. Co.*, 51 *N.J.* 86, 94 (1968); Keeton, "Insurance Law Rights," 83 *Harv.L.Rev., supra,* at 966–967. It is equally important to emphasize that "[a]n insurance contract is preeminently one of the utmost good faith." *Equitable Life Assur. Soc. v. New Horizons, Inc.*, 28 *N.J.* 307 (1958); see *Bowler v. Fidelity & Casualty Co. of New York*, 53 *N.J.* 313 (1969); see also *Allen v. Metropolitan Life Ins. Co.*, 44 *N.J.* 294 (1965). Since we are dealing with rights that derive from a contract of adhesion, which the insurer, as the dominant party, must honor as a fiduciary, it is entirely appropriate that the ultimate burden of persuasion should rest with the insurer.

*Cooper*, 51 *N.J.* at 95 n.3. To that extent we adhere to the majority rule.

This does not mean, however, that it is fair or practical to require the carrier also to assume the burden of producing evidence. The insured would have had control of the case and the opportunity for discovery as to all essential information. The circumstances surrounding the settlement and the operative evidential facts as to its reasonableness and good faith are known to the insured. Knowledge of these facts and circumstances would not ordinarily be in the possession of the carrier, which was not a participant in the settlement negotiations. Thus, the insured, without undue hardship or fundamental inequity, can best marshall the basic facts relating to the settlement. Further, requiring the insured initially to produce proofs concerning the settlement gives the insured the procedural initiative to identify the critical issues and relevant evidence. It will apprise the insurer of the nature of the insured's claim and will remove speculation or guess work as to what will be material in terms of the reasonableness and fairness of the settlement. To the extent that the relevant issues are established and clarified and material evidence is adduced, both parties stand to benefit. Additionally, placing the initial burden of production on the insured will adequately serve to protect the carrier from having to pay a settlement reached through collusion between the insured and the injured third party or which is otherwise unreasonable and the product of bad faith.

By imposing upon the insured the burden of production or going forward with relevant evidence, a settlement which the insured has not shown by the initial production of proof to be *prima facie* reasonable in amount and untainted by bad faith would, of course, be unenforceable. Since, however, the insurer by its unfair dealing has imposed upon the insured the full burden of protecting its own interests and has placed it in the difficult predicament of attempting on its own to secure the benefits of insurance under the policy, the insurer should not be freed of the burden of persuasion on the question of its ultimate

responsibility to pay. It should, therefore, be required to sustain the ultimate and major burden of demonstrating, by a preponderance of the evidence, that it is not liable because the settlement is neither reasonable nor reached in good faith.[6]

We therefore hold that a settlement may be enforced against an insurer in this situation only if it is reasonable in amount and entered into in good faith. The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer. This rule reasonably accommodates and compromises the competing interests of the parties and considerations of public policy. It will discourage collusive or overreaching impositions upon insurance carriers and, at the same time, will be conducive toward encouraging settlement and protecting an insured in its efforts amicably to resolve a claim against it after having been abandoned by its carrier.

In this case we cannot be confident that the result reached by the trial court would have obtained had the evidential burden of production and persuasion been allocated in accordance with our determination. It is pointed out by Franklin Mutual, for example, that Bertram failed to obtain a physical examination of Griggs. It is also argued that Bertram had little incentive to settle for a small or reasonable amount where the policy limit was $100,000 and where Griggs had executed a covenant not to

---

[6]Our decision in *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 *N.J.* 63 (1976), indicating in dictum that the burden of proof as to the reasonableness of a settlement was upon the insured, is not to the contrary. There the central issue in the main case concerning coverage was whether the insurer wrongfully and in bad faith refused to contribute its policy limits to a reasonable settlement. The plaintiff had to prove, as part of its primary case regarding the breach of the insurance policy, and aside from the damages issue, that the settlement was in fact reasonable. In that circumstance, where the reasonableness of the settlement has already been determined by a preponderance of the evidence, it would have been self-defeating and confusing to place the burden on the insurer to prove, in the damages phase of the case, that the settlement was unreasonable.

sue Bertram and to look solely to the carrier for satisfaction of the judgment. This congeries of circumstances suggests that the burden of production of evidence as to the reasonableness and good faith of the settlement properly should be on the insured though Franklin Mutual bears the ultimate burden of persuasion on this issue. There must therefore be a remand for another hearing upon the enforceability of the settlement in accordance with our decision.[7]

One additional argument made by Franklin Mutual is that the settlement is unenforceable because it is not supported by any consideration. The absence of consideration is said to derive from the agreement by Griggs to seek relief solely from the carrier under the consent judgment and not to enforce the judgment against Bertram.

A majority of courts have permitted an injured plaintiff to recover from the insurer despite a covenant to seek relief only from the insurer. *E.g., Coblentz v. American Surety Company of New York*, 416 *F.2d* 1059, 1063 (5 Cir. 1969) (Florida law); *State Farm Mutual Auto Ins. Co. v. Paynter*, 122 *Ariz.* 198, 593 *P.2d* 948, 953 (Ct.App.1979); *Zander v. Casualty Ins. Co. of California*, 259 *Cal.App.2d* 793, 66 *Cal.Rptr.* 561, 568 (1968); *American Family Mutual Ins. Co. v. Kivela*, 408 *N.E.2d* 805, 813 (Ind.App.1980); *Metcalf v. Hartford Accident & Indemnity Co.*, 176 *Neb.* 468, 126 *N.W.2d* 471, 476 (1964). The leading case, *Metcalf*, reasoned that "[w]ith the insurance company denying liability, [the insured] was entitled to use all reasonable means of avoiding personal liability * * * [The carrier] repudiated its obligation to assume and carry the defense to final judgment, and, having abandoned the case, it left the assured at liberty to

---

[7]Regarding the issue of the attorney's fees and costs element of damages, the Law Division held that "they are provable in ordinary course and subject to the same rules of evidence as any other claims of damages," 163 *N.J.Super.* at 97, and that therefore they are excluded from the burden of proof allocation established for the issue of the reasonableness of the settlement. None of the parties disputes this determination.

take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible." 126 *N.W.2d* at 475–476. See also 7C Appleman, *supra*, § 4690 at 228–231. But *cf. Huffman v. Peerless Ins. Co.,* 17 *N.C.App.* 292, 193 *S.E.2d* 773, certif. den. 283 *N.C.* 257, 195 *S.E.2d* 689 (1973) (consent judgment itself incorporated a covenant not to execute; insurer not liable on ground that "under the terms of the consent judgment, [the insureds] were not legally obligated to pay damages to plaintiff"); *Stubblefield v. St. Paul Fire & Marine Ins. Co.,* 267 *Or.* 397, 517 *P.2d* 262, 264 (1973) (even where covenant not to execute existed separate and apart from consent judgment, insurer was not liable for any amount that the insured was not "legally obligated" to pay plaintiff).

An insured tortfeasor should be able to reach an agreement relieving it of liability when its carrier wrongfully declines to defend. In this way an insured is able to retain the protection of its insurance, while the injured party obtains a potential remedy against the insurer who has wrongfully removed itself from the suit. Any possibility of fraud or collusion between the insured and the victim in reaching an agreement to proceed solely against the insurer is best dealt with as a constituent element of the bifurcated burden of proof allocation now established for the purpose of determining whether the settlement was unreasonable in amount or arrived at in bad faith.

Accordingly, the judgment below is affirmed in part and reversed in part and the cause remanded. Jurisdiction is not retained.

CLIFFORD, J., dissenting.

I subscribe generally to the Court's position on insurance carrier liability under circumstances in which, as here, the carrier casts its insured adrift. Furthermore, on the issue of reasonableness of a settlement negotiated by a forsaken insured with an injured claimant, I agree that the burden of going forward with the evidence should be on the insured, with the ultimate burden of proof remaining on the carrier.

However, in this case I would hold the settlement entered into by Griggs and Bertram to be of no effect as a matter of law. The record as it presently stands is of course incomplete on all the details of the settlement, but it is sufficient for me to conclude without hesitation that the settlement was an utter sham, a transparent device conjured up by the parties thereto for the sole purpose of euchring the insurance company. The Court recognizes the cloud hovering over the settlement, see *ante* at 368–369, but views that cloud simply as raising a question of fact on whether the parties were in cahoots. I harbor no doubts on the issue.

Bertram agreed, on the advice of counsel, to let judgment for $9000 be taken against him. He had coverage with Franklin Mutual Insurance Company for $100,000. Inasmuch as Griggs promised not to pursue Bertram personally and indeed promised to furnish Bertram with a warrant for satisfaction of judgment no matter what the outcome of the claim against the insurance company, it mattered not to Bertram whether the settlement was for $9000 or $90,000. His indifference in this regard is manifested by the fact that he consented to a judgment against him without having obtained depositions or even a physical examination of Griggs. (Any claims adjuster paying $9000 without a physical examination report in the file, on a claim ostensibly involving a couple of exuberant high school youngsters having at each other after a basketball game, would swiftly join the ranks of the unemployed.)

Under the circumstances the settlement before us can hardly be deemed to have been entered into in good faith. I would therefore leave the parties to this shabby transaction just where the law found them. I vote to reverse and enter judgment for defendant.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices PASHMAN, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For reversal*—Justice CLIFFORD—1.