**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2909-23

RENEE KRAMPETZ AND
SCOTT KRAMPETZ,

      Plaintiffs-Respondents,

v.

C&R INSURANCE
SERVICES, LLC, PATRICK
ROSS, PATRICK O'BRIEN,

      Defendants-Appellants.

_____

Submitted November 7, 2024 – Decided November 14, 2024

Before Judges Mawla and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2343-18.

Gordon Rees Scully Mansukhani, LLP, attorneys for appellants (Melissa J. Brown and Kevin M. Buttery, on the briefs).

Britcher, Leone & Sergio, LLC, attorneys for respondents (E. Drew Britcher, of counsel; Jessica E. Choper, on the brief).

PER CURIAM

On leave to appeal granted by us, defendants C&R Insurance Services, LLC, Patrick Ross, and Patrick O'Brien contest an April 26, 2024 order denying their motion for summary judgment. We reverse for the reasons expressed in this opinion.

In 2018, plaintiffs Renee and Scott Krampetz filed a medical malpractice action against Brick Women's Physicians, P.C., and one of its doctors (the medical defendants), "alleging deviations from accepted standards of obstetrical care in connection with treatment rendered . . . ." In May 2020, plaintiffs amended the complaint to include negligence claims against defendants for failing to advise and provide the medical defendants with insurance coverage "to safeguard them in the event of any claims." Plaintiffs alleged defendants "were liable for the damages arising from [p]laintiffs['] claims against the [m]edical [d]efendants due to [their] failure to advise the [m]edical [d]efendants" on all viable insurance coverage options, resulting "in a lack of insurance coverage for [p]laintiff[s'] claim." The medical defendants' answers asserted cross claims against defendants for contribution, indemnity, and settlement credit.

A-2909-23

In December 2023, the trial court granted in part plaintiffs' motion in limine to bar defendants from introducing evidence regarding the liability of the medical defendants. The court held "the sole issue to be determined at trial [is] whether . . . [d]efendants deviated from the standard of care" and it preserved defendants' ability to challenge plaintiffs' damages.

In January 2024, the medical defendants entered a "[s]ettlement [a]greement and [j]udgment" with plaintiffs. It recited that the medical defendants relied upon defendants "to advise them of the options for insuring their risk for claims of medical malpractice of themselves and any employees and physicians." And that the medical defendants "were not properly advised and assert that [defendants] . . . had a duty required [as insurance brokers] . . . to advise them, which" they breached. "As a result . . . [the medical defendants were] without coverage to compensate for [plaintiffs'] . . . claims . . . ."

The settlement agreement allowed plaintiffs to take a judgment against the medical defendants totaling $750,000. Plaintiffs would then "proceed against . . . defendants . . . to establish liability on [defendants'] part . . . to enforce the agreed [upon] damage claim herein against these defendants." The medical defendants also agreed "to allow th[e j]udgment to be entered against them to be enforced against defendants . . . ." Notably, the agreement contained a provision

3

stating it constituted the entirety of the agreement between plaintiffs and defendants, yet defendants never negotiated or signed the agreement.

Defendants moved for summary judgment dismissal of plaintiffs' broker malpractice claim. They argued plaintiffs could not pursue their claims against them because they lacked "liability and damages by the underlying tortfeasor . . . ." Moreover, the medical defendants could not assign their professional negligence claim against defendants to plaintiffs.

The trial court found defendants' contention there was no liability or damages was "moot because [the settlement agreement had been filed as] an order for judgment . . . with the [c]ourt, and . . . plaintiffs had properly been assigned their rights from [the medical defendants] . . . ." Pursuant to N.J.S.A. 2A:25-1, "the person sued shall be allowed, not only all set-offs, discounts and defenses [they] ha[ve] against the assignee, but also all set-offs, discounts and defenses [they] had against the assignor before notice of such assignment was given to [them]." The court found the medical defendants agreed they were liable, and "as a result of their deviation there w[ere] injuries that were proximately caused by their deviation to plaintiffs." Thus, "plaintiff[s] would then have the right to demonstrate the deviations from the standard of care w[ere] carried out by the broker defendants, resulting in the medical malpractice

[for] defendants not having insurance coverage regarding the malpractice claims."

Pursuant to Griggs v. Bertram, 88 N.J. 347, 364 (1982), the court concluded "the only matter left before [it] stems from allegations set forth against . . . [defendants], and whether the consented to damages are, in fact, reasonable." Defendants retained the right to argue the damages were unreasonable and "were not made in good faith, that it was some type of collusion on the part of the [medical] defendants with . . . plaintiff in order to come up with this $750,000." Damages would be addressed after the court conducted a jury trial on liability.

I.

We review decisions granting summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). "[Q]uestions of law and the legal consequences that flow from the established facts are reviewed de novo." Granata v. Broderick, 446 N.J. Super. 449, 467 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendants claim the trial court erred in applying Griggs because that case involved the duty owed by an insurer to defend an insured. 88 N.J. at 355. Here, defendants were the medical defendants' insurance broker, not their insurer.

Moreover, the trial court violated public policy because it improperly expanded the duty of good faith imposed on the insurer in Griggs to include all claims for breach of fiduciary duty or negligence.

Defendants also assert the trial court misapplied the law when it found the settlement agreement sufficient to establish the damages needed to proceed with the broker malpractice claim. The agreement concerned plaintiffs' damages due to the medical defendants' conduct, not defendants' acts or omissions. Instead, the court should have determined whether the medical defendants sustained damages caused by defendants' breach of duty, not whether plaintiffs sustained damages. The settlement agreement did not contain an assertion that medical defendants suffered any damages, which is essential to establishing the broker malpractice claim.

Defendants claim the medical defendants colluded with plaintiffs to avoid exposure. However, by doing so, they violated defendants' due process rights because they avoided establishing the medical defendants' liability, which is a prerequisite to proving the broker malpractice claim against defendants. The settlement agreement violated the Comparative Negligence Act, N.J.S.A. 2A:15-5.2, and the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-3, which were "enacted to promote the fair sharing of the burden of judgment by

6

joint tortfeasors and to prevent a plaintiff from arbitrarily selecting [their] victim." Holloway v. State, 125 N.J. 386, 400-01 (1991).

II.

N.J.S.A. 2A:25-1 permits the assignment of tort claims arising out of contracts. However, the assignment of other forms of tort claims prior to a judgment, including professional malpractice claims, has historically been considered invalid under New Jersey law. Conopco, Inc. v. McCreadie, 826 F.Supp. 855, 867 (D.N.J. 1993); see also DiTolvo v. DiTolvo, 131 N.J. Super. 72, 79 (App. Div. 1974) (noting the absence of a statute permitting the assignment of a tort claim); Costanzo v. Costanzo, 248 N.J. Super. 116, 121 (Law Div. 1991) (holding "in New Jersey, as a matter of public policy, a tort claim cannot be assigned").

Defendants were not party to the settlement agreement. The fact that the settlement agreement was entered as a judgment by the court did not overcome that defendants did not agree to the settlement. The trial court misapplied the law because the medical defendants could not assign their professional negligence claim to plaintiffs.

The trial court also erred when it analogized this matter to Griggs. As defendants aptly point out, Griggs has nothing to do with the facts of this case,

7

and its legal principles are inapplicable. There, the issue was whether an insurer, which failed to notify its insured of the possibility of noncoverage, was estopped from denying coverage of a claim against its insured. Griggs, 88 N.J. at 355. Our Supreme Court held an insurer could be estopped from denying coverage, despite clear contractual language excluding the claim from coverage, where the insurer undertakes a defense knowing there is a basis for noncoverage without reserving its rights to deny coverage later. Id. at 355-56. The Court held an insurer has an obligation to deal in good faith with its insured both by investigating a claim within a reasonable time, and through its duty of fair and full disclosure between it and the insured. Id. at 360-61.

Defendants' relationship, and in turn their obligations to the medical defendants, was entirely different. An insurance broker acts as a fiduciary to the client. Holm v. Purdy, 252 N.J. 384, 404 (2022). The broker has "a duty to advise insureds of their coverage needs where the insurer is aware of a particular peril." Sears Mortg. Corp. v. Rose, 134 N.J. 326, 348 (1993). A "broker's duties are . . . '(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage [they] undertook to supply.'" Holm, 252 N.J. at 405 (quoting President v. Jenkins, 180 N.J. 550, 569 (2004)).

Brokers "have a limited duty to a third party who is not the insured, but who has nonetheless suffered harm by virtue of the broker's act or omission." Ibid. "If an agent or broker fails to exercise the requisite skill and diligence when fulfilling those obligations, then there is a breach in the duty of care, and liability arises." Ibid. "[T]he plaintiff must prove that in addition to being negligent, the broker's negligence was a proximate cause of the loss." Harbor Commuter Serv., Inc. v. Frenkel & Co., 401 N.J. Super. 354, 368 (App. Div. 2008); Regino v. Aetna Cas. & Sur. Co., 200 N.J. Super. 94, 99 (App. Div. 1985). There must also be "actual damages." Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008).

The facts in the summary judgment record showed none of these legal precepts were met. Rather, the medical defendants assigned their rights to pursue a broker malpractice claim against defendants to plaintiffs without any evidence the medical defendants suffered a loss or had actual damages due to defendants' acts or omissions. This critical, missing component was fatal to plaintiffs' claims against defendant and should have resulted in summary judgment in defendants' favor and dismissal of the case.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-2909-23