**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1972-23

MAKAYLA BUNTING,
Administratrix and Administratrix
ad Prosequendum of the ESTATE
OF MICHAEL BUNTING,

     Plaintiff-Appellant,

v.

EMIL A. SCHROTH, INC.,

     Defendant,

and

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY, GREAT
NORTHERN INSURANCE
COMPANY, and CHUBB
INSURANCE COMPANY OF
NEW JERSEY,

     Defendants-Respondents.

_____

Argued February 12, 2025 – Decided May 16, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1035-22.

Matthew G. Bonanno argued the cause for appellant (Rebenack, Aronow & Mascolo, LLP, attorneys; Matthew G. Bonanno and Sherry L. Foley, of counsel and on the briefs).

Richard J. Williams, Jr., argued the cause for respondent New Jersey Manufacturers Insurance Company (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Richard J. Williams, Jr., of counsel and on the briefs).

Michael J. Rossignol argued the cause for respondents Great Northern Insurance Company and Chubb Insurance Company of New Jersey (Riker Danzig, LLP, attorneys; Michael J. Rossignol and Lucas D. Katzenmeier, of counsel and on the briefs).

PER CURIAM

Michael Bunting was working for Emil A. Schroth Inc. when he severely injured his foot after a baler[1] broke and fell on his foot as he was feeding copper through the machine. He filed a worker's compensation claim and was paid

---

[1] Incorrectly spelled as "bailer" in the record. A "baler" is a machine that compresses material into a "bale." A "bailer" is used for ground water monitoring, which clearly does not apply here, as Bunting was feeding copper into the machine. "Bailer and Baler – Understand the Difference," SINOBALER MACH., https://www.sinobaler.com/bailer-baler-difference/#:~:text=While%20a%20baler%20satisfies%20the,check%20on%20the%20pollution%20levels.

$138,000 under Schroth's workers' compensation insurance with New Jersey Manufacturers Insurance Company (NJM).

Bunting sought further compensation by filing a personal injury lawsuit against Schroth in the Law Division, alleging his injury was due to Schroth's gross negligence and intentional wrongdoing. He asserted Schroth "knew, or had reason to know, that . . . the [baler]was damaged and could not be safely used as intended at the time of the subject accident." Bunting and Schroth subsequently entered into a consent judgment for $1,250,000.[2] Per their agreement, Schroth assigned its rights to Bunting to pursue insurance coverage from NJM, Great Northern Insurance Company, and Chubb Insurance Company of New Jersey (collectively insurers), Schroth's general liability insurance carriers[3] who denied defense and indemnity coverage for Bunting's accident.

---

[2] The agreement was reached in accordance with Griggs v. Bertram, 88 N.J. 347, 369 (1982). There, our Supreme Court upheld a similar agreement in which an injured party and the alleged tortfeasor consented to a judgment against the alledged tortfeasor on the condition that the judgment not be enforced and the alledged tortfeasor assigned its rights against its insurance carrier to the injured party to seek payment of damages. Griggs, 88 N.J. at 369-70.

[3] Together with a standard Workers' Compensation insurance policy, NJM issued Schroth an Employers Liability Insurance Policy. Schroth's policy with Chubb and Great Northern provided $2 million of excess umbrella coverage for losses above the NJM liability policy, in addition to other underlying policies.

Bunting agreed not to enforce his judgment against Schroth. Bunting then amended his complaint to name the insurers as defendants and sought a declaratory judgment that both insurers must provide liability coverage for Schroth's claim.

In lieu of an answer, the insurers filed separate Rule 4:6-2(e) motions to dismiss the complaint with prejudice for failure to state a claim. The insurers contended Schroth was not entitled to coverage due to their policies' Exclusion C5 and EII endorsement provisions. Exclusion C5 expressly states there is no coverage for "[b]odily injury intentionally caused or aggravated by [Schroth]." The EII endorsement emphasized and expanded Exclusion C5, stating:

> With respect to Exclusion C5, this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8 including but not limited to bodily injury caused or aggravated by an intentional wrong committed by [Schroth] or [Schroth's] employees, or bodily injury resulting from an act or omission by [Schroth] or [Schroth's] employees, which is substantially certain to result in injury.

Bunting opposed the motions and cross-moved for partial summary judgment. Unfortunately, while the motions were pending, Bunting passed

---

The excess policy mirrored the underlying liability policy by including the same exclusionary terms.

4

away[4] resulting in a court order substituting his daughter Makayla Bunting as Administratrix and Administratrix ad Prosequendum of Bunting's estate for Bunting.

The motion judge, Richard English, issued an order granting the insurers' motions to dismiss with prejudice, and denying Bunting's cross-motion for summary judgment. In a thirteen-page rider to the order, the judge explained the "primary issue in this case is whether Exclusion C5 violates public policy when the exclusion denies coverage for damages stemming from 'intentional wrongs.'" He highlighted that "[t]he core objective of workers' compensation is to adhere to public policy by ensuring that every injured worker has an avenue for seeking redress[,] . . . and [] plaintiff did have such recourse in the present case." The judge held "Exclusion C5 of the [p]olicy does not violate public policy and is an enforceable exclusion that properly excludes coverage for 'intentional wrongs' claims." The judge stressed "the plain language of Exclusion C5 excludes all 'intentional wrong' claims from coverage," as the "endorsement language was updated and revised per the directives of the

---

[4] The record does not indicate the cause of death; we thus assume it was not related to the accident.

Commissioner of the Department of Banking and Insurance to eliminate any ambiguities and explicitly excludes 'all' intentional wrongs" from coverage.

In rejecting Bunting's contention that Exclusion C5 violates public policy, the judge reasoned that "removal of Exclusion C5 would lead to an increase in moral hazard, going <u>against</u> public policy." (Emphasis added.) The judge opined that, under Exclusion C5 and the EII endorsement provisions, employers "are explicitly warned that they cannot jeopardize their employees' well-being through intentional wrongs without consequences," and this prevents "insurers from becoming a safety net for employers" whose intentional conduct in disregarding safety results in injuries to their employees.

Bunting appealed and prior to our initially scheduled oral argument, we postponed oral argument pending our Supreme Court's decision in <u>Rodriguez v. Shelbourne Spring, LLC</u>, 259 N.J. 385 (2024), with an eye that the ruling might impact this appeal.[5] In <u>Rodriguez</u>, the Court considered whether an insurer was obligated to defend its insured employer against an employee's personal injury lawsuit alleging negligence and intentional wrongdoing by the employer. 259 N.J. at 390. The policy in <u>Rodriguez</u> contained the identical Exclusion C5 and

---

[5] Oral argument was originally scheduled for November 6, 2024, and <u>Rodriguez</u> was decided December 12, 2024.

EII endorsement in question here. See id. at 401-02. Following the Court's decision on December 12, 2024, pursuant to our request, the parties submitted supplemental briefs addressing the impact of Rodriguez.

Having considered the parties' arguments, we affirm Judge English's order dismissing Bunting's claims for coverage from the insurers. We conclude that based on Rodriguez, the insurers are not obligated to provide defense nor indemnity coverage to Bunting due to the policies' Exclusion C5 and EII endorsement, given his allegation that his injury was caused by Schroth's intentional wrongdoing.

We are unpersuaded by Bunting's argument that Rodriguez is not controlling because the issue there was whether the insurer had a duty to defend the employer while the issue here is whether coverage should be provided "in light of the [workers' compensation] statutory scheme and mandate that any and all employee workplace injuries are covered by insurance." Likewise, we are unpersuaded by Bunting's argument that because Schroth's workers compensation policy, in accordance with the statute, covers all work-related injuries except for intentional wrongs, the "logical conclusion . . . is that the Employer Liability portion of the policy is meant to fill that gap in coverage."

A-1972-23

Rodriguez clearly pronounced that "Laidlow[6] claims of intentional wrongdoing . . . are expressly excluded under the plain language of the [employer's liability insurance] policy exclusions," and this exact language is operable here. 259 N.J. at 404. Because Bunting's Laidlow claims are not covered under Schroth's policy, they cannot trigger an insurer's duty to indemnify.

We also conclude Bunting's contention that the exclusionary provisions in Schroth's insurance policy violate public policy is without merit as Rodriguez expressly ruled that the exclusions at issue do not violate public policy. Id. at 405. The Court held the "challenged intentional wrong exclusions," the same exclusions challenged here, "are not against public policy." Id. at 407. Consequently, we discern no basis to distinguish Rodriguez. Judge English got it right.

To the extent we have not addressed any of Bunting's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

---

[6] Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 606 (2002), involved an employee's personal injury claim against another employee and their employer due to intentionally wrongful conduct.

A-1972-23