NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____

|  |  |
|---|---|
| ESTATE OF JOAN LEE JOHNSTON, | : TAX COURT OF NEW JERSEY |
| | : DOCKET NO: 010286-2015 |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| DIRECTOR, DIVISION OF | : |
| TAXATION, | : |
| | : |
| Defendant. | : |

_____

Decided: June 15, 2018

William J. Kaufmann for Plaintiff (Cafiero & Kaufmann attorneys).

Heather Lynn Anderson for Defendant (Gurbir S. Grewal, Attorney General of New Jersey, attorney).

**CIMINO, J.T.C.**

## I. INTRODUCTION

Plaintiff taxpayer, Estate of Joan Lee Johnston, through its administrator, James Johnston, Jr. (James Jr.) seeks a refund of transfer inheritance tax paid. James Jr. alleges that the clear market value of the estate is reduced, and thus the tax obligation is reduced, because the estate has to pay to James Jr. and his children for waste damages which Joan Lee Johnston (Joan Lee) caused to real property she occupied during her lifetime. The

-1-

Director has disallowed this deduction and the corresponding refund.

Our Supreme Court has indicated that summary judgment provides a prompt, business-like and appropriate method of disposing of litigation in which material facts are not in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 530 (1995). Additionally, cross-motions for summary judgment demonstrate to the court the ripeness of the matter for adjudication. Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008).

Both parties have moved for summary judgment and this matter is ripe for summary judgment. For the reasons set forth in greater length below, this Court rejects the arguments of taxpayer and grants Summary Judgment in the Director's favor.

## II. STATEMENT OF FACTS

The Johnston Family owned a modest home located at 221 Gilford Avenue, Haddon Township in Camden County. In addition, they had acquired a home at 202 West 22nd Avenue, North Wildwood in Cape May County. North Wildwood is located on a barrier island which abuts the Atlantic Ocean. The family consisted of the father, James J. Johnston, Sr. born in 1903, the mother, Aulien Q. Johnston born in 1903 and two children, Joan Lee Johnston born in 1936 and James Johnston, Jr.

Aulien Johnston passed on May 23, 1988. Upon the death of Aulien Johnston, all the marital assets became vested with James Johnston, Sr. Shortly thereafter, James Johnston, Sr. passed on September 16, 1988. Upon the death of James Johnston, Sr., the disposition of assets was governed by a will he executed on May 14, 1988.

The will provided that Joan Lee could continue to live in the Haddon Township property for as long as she desired. It is undisputed that since her birth in 1936, Joan Lee had always lived in the residence of her parents. The will also provided that she would be responsible for all costs relative to the property. Upon the death of Joan Lee, the property was to be sold and the proceeds divided between James Jr. and any grandchildren equally, share and share alike, per capita and not per stirpes.[1] The will also provided that the North Wildwood property would also go to Joan Lee. The alleged reason for giving the property to Joan Lee was to provide additional financial security for her. Finally, all the rest, residue and remainder of the estate was to be divided equally between James Jr. and Joan Lee.

Joan Lee passed on March 31, 2011. In accordance with the terms of James Johnston, Sr.'s will, the life estate expired and

---

[1] The exact phrase appeared in an earlier will and due to a scrivener's error was unintentionally omitted. However, the Probate Court entered an order recognizing this error and correcting same.

the remainder interest in the Haddon Township property went in equal shares to James Jr. and the two grandchildren of James Sr. (who are also James Jr.'s children), Anna Lynn Caroline Johnston LeMaster and James J. Johnston, III.

It should be made clear that the disposition of the Haddon Township property was not a part of Joan Lee's estate since any interest she had in the Haddon Township property expired with her death in accordance with the terms of the life estate created by James Johnston Sr.'s will. On death, Joan Lee's estate consisted primarily of the North Wildwood property and an investment portfolio.

It is alleged that over the course of twenty-three years, from 1988 through 2011, in which Joan Lee lived at the house alone, she did not allow her brother, James Jr., to enter the property.

Upon entering the property after the death of Joan Lee, James, Jr. discovered that the place was an utter mess and that Joan Lee was not merely a hoarder of bric-a-brac, but someone who did not throw away things such as empty food containers. Photographs taken by James Jr. reveal items piled up on the floor everywhere. Practically every square inch of table space and counter space was stacked with trash including empty food containers, dirty dishes and other debris. Things were piled everywhere leaving narrow pathways to walk. It must be emphasized that the home was not merely cluttered, but dirty and unsanitary as evidenced by the

photographs of the kitchen and bathroom. This was not someone who was merely accumulating items such as books, magazines or memorabilia, but was also not cleaning the bathroom, kitchen or other areas for many years. James Jr. alleges that as a result of Joan Lee's hoarding, the house suffered damage, including mold and plumbing issues. The Director allowed a deduction of the expenses of $1,500 to remove debris and $1,814 for plumbing.

James Jr. alleges that the actions of Joan Lee constitute waste in the legal sense and that he and his children should be compensated from Joan Lee's estate. Since Joan Lee died intestate, the estate would be going to James Jr. in any event. Said transfer of assets would be subject to a tax in the amount of 11%. The upshot of James Jr.'s waste claim is that damages for waste would be deducted from Joan Lee's estate and thus not subject to transfer inheritance tax.

James, Jr. is the duly appointed Administrator of Joan Lee's estate. The Director and James Jr. agree that the value of the Haddon Township home is $160,000.[2] While the value of the property

---

[2] Previously the Director had taken the position that absent correction of the scrivener's error, the Haddon Township property became part of the residual estate of James Sr. which would then be divided between Joan Lee and James Jr. evenly. Upon the death of Joan Lee, her share would have become part of her estate. Resultantly, the Director wanted to add half the value of the Haddon Township property, $80,000.00 to the assets of Joan Lee's estate. As indicated in the previous footnote, the scrivener's error has been corrected by the order of the Probate Court.

in its deteriorated condition has been accepted by the parties, the value of the property in undeteriorated condition is somewhat unclear. James Jr. opines that the fair market value of the property is $230,000 based on a similar property located two doors away. Thus, the claimed diminution in value is $70,000.

Under New Jersey's waste statute, James Jr. and his children initially alleged that they were entitled to treble damages against Joan Lee for the total amount of $210,000. It was asserted that this alleged debt of the estate would escape the transfer inheritance tax. The waste claim would be a claim against her estate which consists of the Wildwood property worth $167,033, other personal property amounting to $180,869 and an insurance policy in the amount of $9,868 for a gross estate of $357,770. From this, the Director allowed deductions of $39,838 reducing the estate to $317,932. Deducting the waste damages of $210,000 would result in a clear market value of the estate of $107,932.

Later, James Jr. and his children abandoned trebling the damages and only sought the base $70,000 waste claim. This would result in an estate with a clear market value of $317,932 less the $70,000, or $247,932.

## III. CONLUSIONS OF LAW

### A. Transfer Inheritance Tax

The New Jersey Inheritance Tax Act is a tax on the transfer of assets where the "property . . . is transferred by deed, grant, bargain, sale or gift . . . intended to take effect in possession or enjoyment at or after . . . death." N.J.S.A. 54:34-1(c). The tax imposed by the Inheritance Tax Act is upon the clear market value of the property transferred. N.J.S.A. 54:34-5. In determining the clear market of the property, certain "deductions" are allowed. Ibid. One of those deductions is the "debts of decedent owing at the date of death . . ." N.J.S.A. 54:34-5(a). The issue in this case is whether the statutory tort claim of waste pursued by James Jr. personally (not as administrator) and his children is a debt of Joan Lee owing at the date of death that would reduce the clear market value of the estate.

James Jr. is the sole beneficiary whose distribution is subject to an 11% transfer inheritance tax. N.J.S.A. 54:34-2(c)(2). However, if the suit for waste is successful, the portion of the estate constituting payment of the waste claim would not pass to him as a beneficiary, but instead be paid to him and his two children as creditors of the estate. The amount paid to James Jr. and the children as creditors would not be subject to transfer inheritance tax. However as creditors, the payment may be taxable as income or capital gains for federal income tax purposes and

-7-

income for state gross income tax purposes.  Generally, the income tax due and owing would be greater than the transfer inheritance tax.[3]  However, the specific tax and financial circumstances of James, Jr. and his children are unknown.

**B. Deductibility of Tort Claims**

Before proceeding further, it has to be determined if there is a valid basis for the deduction.  The New Jersey Courts have not squarely dealt with the deductibility of tort claims.  This is not a situation where the individual making the tort claim is an independent third party who does not have an interest in the estate.  Rather, the claim is being made by the administrator of the estate in his individual capacity along with his two children. The practical effect, if successful on the claim, would be to shift a portion of Joan Lee's estate to satisfy a claim for damages.

Over the years, there have been various iterations of the theme dealing with the distribution of estate assets that are not exactly in accordance with the terms of the will.  A guiding principle is that "[o]ur courts have long taken the position that the substance of the transaction controls over the mere form of creation, and that technical tools within the law of conveyancing

---

[3] Taxpayer abandoned the trebling of damages from $70,000 to $210,000.  Ostensibly, this was done since the treble damages of $140,000 ($210,000 less $70,000) are exemplary damages subject to federal and state income tax which is potentially more than the transfer inheritance tax rate.  <u>See</u> I.R.C. 104(a), (c); N.J.S.A. 54A:5-1(l).

are not to thwart the purpose and the intent of the statute. The range of the statute should not be so restricted as to frustrate its evident purpose." Newberry v. Walsh, 20 N.J. 484, 493 (1956)(citations omitted).

A common theme which runs through many inheritance tax cases is the shifting of estate distributions from an individual in one class to an individual in another class of beneficiary, resulting in a decrease of taxes.[4] This generally occurs as a result of will contests which are resolved, or an allegation that the monies paid are not part of the estate, but constitute a deductible debt of the estate.

There are few recent cases dealing with shifting of distributions and the last time the New Jersey Supreme Court dealt with this issue was in 1976. See In re Estate of Lingle, 72 N.J. 87 (1976). This is probably due in part to the fact that in the 1980s the Legislature eliminated the transfer inheritance tax for transfers between spouses, parents, grandparents, and issue, thus reducing the potential for tax implications. N.J.S.A. 54:34-2(a), (c).

---

[4] For example, for transfers over $25,000 to Class C beneficiaries, which include siblings, are taxed at progressive rates of eleven through sixteen percent. N.J.S.A. 54:34-2(c). On the other hand, transfers to Class A beneficiaries such as spouses, parents, grandparents and issue are not taxed. N.J.S.A. 54:34-2(a). Shifting a distribution can have significant tax consequences.

Moreover, the last reported decision to squarely deal with the issue of debt deductions was by the Appellate Division in 1950. See Sullivan v. Margetts, 9 N.J. Super. 189 (App. Div. 1950). This may be due to the fact that while the transaction may escape transfer inheritance taxation, the recipient of the monies may still be subject to federal income tax and New Jersey gross income tax.

The basic rule is that the Director does not look at how the property was actually distributed, but rather, what were the terms of the will or other document controlling disposition. Lingle, 72 N.J. at 97; De Rosa v. Dir., Div. of Tax'n, 29 N.J. Tax 482, 486 (App. Div. 2016); Donovan v. Dir., Div. of Tax'n, 10 N.J. Tax 224, 229 (Tax 1988). This basic rule was grounded in the statutory provision that provides that the transfer inheritance tax is a tax on the transfer by will or by the intestate laws of the estate. N.J.S.A. 54:34-1(a).

The decisions dealing with the taxation of shifting estate distributions and debt deductions are hard to synthesize into a common body of law. However, what can be gleaned from reading these decisions as a whole is that there are two requirements that are necessary for a debt to be a valid deduction from the estate. The first requirement is that the debt, or more appropriately the money the estate intends to pay for the debt, must be supported by consideration or damages. See Lingle, 72 N.J. at 97. Otherwise,

-10-

the payment constitutes what is merely a donative distribution of the estate. The second requirement is that the decision to pay the debt must have been entered at arm's length. See Id. at 92-93. This is not to suggest full-blown litigation, but rather a process in which the parties dealt with each other at arm's length and without collusive effect.

### 1. The need for consideration or damages

The first requirement of consideration or damages is addressed in Lingle in which the decedent left his entire estate to his second wife, despite a separation agreement between a decedent and his first wife in which he promised to leave one-half of his estate to his daughters by the first marriage. Id. at 91. The Director calculated and assessed the tax in accordance with the terms of the will taking no account of the marital settlement agreement. Ibid. The Appellate Division reversed indicating that the payments to the daughters should be considered as debts, and hence, fully deductible. Ibid. While the Supreme Court acknowledged that debts constitute a valid deduction in determining the clear market value to be taxed, the Supreme Court differed from the Appellate Division and held that a promise to make a disposition was not intended by the Legislature to be included as a deduction in the calculation of the transfer inheritance tax. Id. at 92-93. However, the transfer would not be taxable since the Supreme Court recognized that the Legislature

intends to only tax transfers of a donative nature. Id. at 97. "[A] transfer made pursuant to a contract will not be subjected to an inheritance tax where the estate has received a full and adequate consideration in money or money's worth." Ibid.

The instant case does not involve a contract claim, but rather a tort claim. The rough corollary to consideration for a tort claim is damages. Just like in a contract claim where you can have a meeting of the minds, but no contract without consideration, the liability for a tort claim does not have a real impact on an estate unless there are corresponding damages.

Overall, there must be a real tort claim. Here, waste is the tort alleged, an ancient doctrine of law which was a rarity even in Blackstone's day. Kenlee Corp. v. Isolantite, Inc., 137 N.J. Eq. 459, 461 (Ch. 1946).

### a. The waste claim

On March 17, 1795, New Jersey adopted an Act for the prevention of waste. L. 1794, C. 547, §1 through §8. The Statute essentially followed two earlier English statutes, the Statute of Marlbridge enacted in 1267 and the Statute of Gloucester enacted in 1278. Camden Trust Co. v. Handle, 132 N.J. Eq. 97, 99 (E. & A. 1942). The Statute of Marlbridge broadened the common law concerning waste to include tenants-for-life and for a term of years. Ibid. The Statute of Gloucester adopted nine years later established the punishment for waste as forfeiture of the thing or

-12-

place wasted and treble damages.  Ibid.  The statute is currently

codified in Chapter 65 of Title 2A.  N.J.S.A. 2A:65-1 through -

10.

The statute provides in pertinent part:

> No tenant . . . for life . . . shall, during
> the term, make or suffer any waste, sale or
> destruction of any property belonging to the
> tenements demise, without special license in
> writing.
>
> [N.J.S.A. 2A:65-2]
>
> A civil action may be maintained in the
> superior court against the tenant, and upon
> finding that waste has been committed,
> treble damages shall be assessed or granted,
> and the defendant shall lose the thing or
> place wasted.
>
> [N.J.S.A. 2A:65-3]

New Jersey Courts have recognized two main varieties of waste,

voluntary and permissive.[5]  Voluntary waste, which is sometimes

also referred to as active waste, is an affirmative wrong act by

a tenant.  This would include such acts a pulling down buildings

or chopping down trees during the tenancy.

On the other hand, permissive waste is the failure to act to

protect the property.  For example, allowing a roof to leak and

---

[5] There is also a third variety called ameliorative waste in which
the tenant destroys something, but as a result makes the property
more valuable.  Thomas w. Merrill, Melms v. Pabst Brewing Company
and the Doctrine of Waste in American Property Law, 94 Marq. Law
Rev. 1055, 1056 (2011). Needless to say, New Jersey courts have
not addressed this type of waste.

doing nothing, leading to interior water damage, could be considered permissive waste. "A tenant for life is bound to repair only to the extent of preventing permissive or actual waste. In fulfillment of this duty, it is said that he must keep the premises in as good repair as when his estate began, not excepting ordinary wear or tear. If, in the course of time, a new roof is needed he should put it on; if paint wears off, he is bound to repaint. But he is under no obligation in respect to the loss of economic value of a building which normally occurs." In re Estate of Roth, 139 N.J. Eq. 588, 596 (Prerog. Ct. 1947). It is settled law that an action for permissive waste will lie under the statute of waste. Newman v. Sanders, 89 N.J.L. 120, 121 (Sup. Ct. 1916). However, it has been seriously questioned whether the "filthy condition" of the premises may amount to a remedy for waste since there must be permanent damage. Miller v. Foreman, 37 N.J.L. 55, 59 (Sup. Ct. 1874).

The parties have stipulated that the house is only worth $160,000.00 in its current state. No proofs have been presented as to what the property would be worth but for its filthy condition. James Jr., as administrator, presents one comparable sale from two doors down as to what the property would be worth in unfilthy condition, but does not provide any proof as to how this property is comparable in size, age or condition save the filth. Moreover, James Jr. does not make any adjustments for differences

in age, size or condition between the subject property and the property two doors down.

The difference in value due to the filth and such may not rise to an actual claim. The law provides that normal depreciation is not subject to a waste action. In re Estate of Roth, 139 N.J. Eq. at 596. It is beyond doubt that this property is in somewhat rough condition and is littered with filth and debris. However, there has not been any showing what effect this has on value. For example, the cost to clean up and repair the premises might only be a fraction of the alleged loss of value. In other words, a small investment in repair and clean-up may reap a much larger increase in value. According to the estate returns, the Director allowed a deduction for $1,500 in cleanup and $1,814 in plumbing. The law of waste is more concerned with permanent damages such as the removal of minerals or the cutting of trees which are not easily replaceable. See, e.g., Moorehouse v. Cotheal, 22 N.J.L. 521, 523 (Sup. Ct. 1850)(lumber); Gaines v. Green Pond Iron Mining Co., 33 N.J. Eq. 603, 607-08 (E. & A. 1881)(minerals). The doctrine does not fit squarely into property that has suffered permissive waste since many times the damage is reversible.

There is also the issue of remediation stigma which has been described by the example of a house with an intact roof that may be slightly more valuable to a buyer than a house with a roof that has been properly repaired because of fear of further leaks and

possible hidden damage in the house. <u>Hous. Auth. v. Suydam Investors, LLC</u>, 177 N.J. 2, 21 n. 4 (2003). However, this is not to suggest that a dollar-for-dollar reduction would be appropriate. <u>Inmar Assoc., Inc. v. Borough of Carlstadt</u>, 112 N.J. 593, 605 (1988).

There has not been any presentation of the cost to remediate the property. All we have are pictures of what appear to be a hoarder's residence. Sure it may be true that the rugs are ruined, but even with normal wear and tear, rugs may need to be replaced after twenty years.

The same holds true for the walls. Even if Joan Lee was a better housekeeper, the walls may need to be repainted, wallpaper removed and paneling removed, if not for any reason but to update the colors and style. The kitchen and bathroom appear to be dated as well. Even if not in deplorable conditions, these may need to be remodeled as well. At this juncture, there is simply insufficient evidence to establish waste that resulted in damages.

## 2. **Adversarial process free of collusion**

The second requirement in establishing a valid debt is that the decision to pay the debt must be have been entered as part of an arm's length transaction. This is not to suggest a full-blown trial is necessary, but rather a process in which the parties dealt with each other at arms' length and without collusive effect.

In De Rosa, the matter did not involve a debt, but rather a will contest, in which a portion of the estate distribution was shifted from a taxable Class C beneficiary to a nontaxable Class A beneficiary. De Rosa, 28 N.J. Tax at 75-76. Both the Appellate Division and the Tax Court expressed concern when the executor is also a beneficiary. De Rosa, 29 N.J. Tax at 486, 28 N.J. Tax at 80. The Tax Court suggested that "[i]f an independent executor settles a will contest to best effectuate the terms of the will, then perhaps it would be proper to consider the agreement when assessing a transfer inheritance tax." De Rosa, 28 N.J. Tax at 80. The court did not reach that issue because the executor was also a beneficiary. Id. at 80-81. The court determined the agreement appeared to be more similar to an agreement between beneficiaries to redistribute estate assets. Thus, the Director was required to calculate the inheritance tax under the terms of the will, not pursuant to the terms of the settlement agreement. Ibid.

Likewise, in Sullivan, the nurse and housekeeper of a decedent claims she was promised his whole estate, or sufficient property to reasonably compensate her for her services. Sullivan, 9 N.J. Tax at 191. A probate action was filed, and settled, but a deduction for the payment of services rendered was rejected by the Director. Id. at 191-92. The matter was remanded by the Appellate Division because it was uncertain whether the Director

-17-

investigated the facts on which the appellant's claim against the estate was based and then satisfied himself that the settlement was fair.  Id. at 195.

In this case, James Jr., in his personal capacity, is asserting a claim against himself as the administrator of Joan Lee's estate.  "The distinction between a person in his personal capacity and in his capacity as a representative, or as an executor, is so clearly drawn that the two characters or capacities are separate and independent – they are different persons or entities. . ."  Bd. of Ed. v. Davenport, 2 N.J. Misc. 564, 565 (Ch. 1924).  "It is clear that a man cannot, in his individual capacity, sue himself in his capacity as executor."  Shippee v. Shippee, 122 N.J. Eq. 570 (Ch. 1937)(citing Black v. Shreeve, 7 N.J. Eq. 440, 457 (Ch. 1848)).  As explained long ago, "[f]undamental principles forbid that he should be trusted to conduct both sides of a litigation, or even allowed to occupy a position where he would be entitled to know, in advance, by what means it was expected the claim against him could be established, and also what evidence would be offered in disproof of his defence [sic]."  Executors of Ransom v. Geer, 30 N.J. Eq. 249, 251 (Ch. 1878).  Obviously, there are situations in which an administrator can satisfy debts owing to himself without a full-blown adversarial proceeding.  A perfect example of this is the reimbursement of

reasonable funeral expenses paid from the administrator's personal funds.

While this Court can review a disputed debt and evaluate whether the resolution of a debt was reached through an arm's length transaction, the Tax Court is not in a position to conduct the adversarial proceeding necessary to establish an arm's length process. A will contest is best left to the determination of the Probate Part of the Chancery Division of the Superior Court, and a waste claim is best left to the Law Division of the Superior Court.

In this case, James Jr. is both the individual bringing the waste claim as well as the administrator defending against the claim. He is hopeful that he can merely file his action in Superior Court and have a default judgment. Even if the court were to require a proof hearing, this is not truly an adversarial proceeding. James Jr. argues that the Director and the Tax Court, would have to blindly accept this adjudicative process, a process in which the same individual is on both sides has a certain germ of mischief.

The binding effect of adjudications which negatively and collaterally impact a third party have been addressed by the courts in New Jersey in a number of instances involving the liability of insurers to pay claims for which the insurers were not involved in directing the defense. In these types of cases, the courts have

held that the settlement between the insured and third party may be enforceable against an insurer only if it is a reasonable amount and entered into in good faith. Griggs v. Bertram, 88 N.J. 347, 368 (1982). The concern of the Court was to discourage collusive or overreaching impositions upon insurance carriers. Id. at 367-368. While the Court recognized that it was the insurer that caused the situation by its unfair dealing in refusing to provide a defense, over-reaching by the insured was not the remedy to unfair dealing.[6] Ibid.

In the later Appellate Division decision of Fireman's Fund Ins. Co. v. Imbesi, 361 N.J. Super. 539 (App. Div. 2003), the court noted that a negotiated settlement "becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party. . ." Id. at 577.

Unlike an insurance case in which the burden can be shifted to the insurer once a prima facie case has been established, the Director did not engage in unfair dealing and the burden of proof remains with the estate which asserts the claim. See Lingle, 72 N.J. at 97. See also Sullivan, 9 N.J. Super. at 195 (concerned that the Director was satisfied that settlement was fair).

---

[6] As a result of the insurer's unfair dealing, once the prima facie case was established, the burden of proof shifted to the insured. Griggs, 88 N.J. at 367-68.

The Tax Court is not to adjudicate the underlying claim but to examine whether it was conducted or negotiated at arm's length. From the body of the case law examined, there are a number of factors that may be indicative as to whether a debt of the decedent arose in an adversarial context through an arm's length process. These factors include:

- the relationship, either familial or otherwise between the executor and the person asserting the debt;

- if the parties are indeed related, the quality of their relationship (i.e., ex-spouse, siblings who do not get along); whether the same parties are on both sides of the proceeding or directing the proceedings (i.e. individual who is both an executor and a claimant or beneficiary);

- the value of a claim as determined by a qualified appraiser, or the overall quality of the valuation of the claim;

- whether a full hearing was held in the matter instead of the entry of a default judgment or consent judgment;

- whether the debt or the damages had some relationship to adequate consideration or properly reflect damages;

- whether there are proofs that exist prior to death that establish a claim;

- whether an action to collect a debt was instituted prior to the death of the decedent;

- whether the payment of the claim results in a reduction of tax obligations, while at the same time not leading to diminution of actual monies received by a beneficiary of the estate or the beneficiary's family;

- whether the debt actually has the effect of transferring the state distribution from one family member to another, and;

- whether each side of the dispute is represented by separate counsel.

In this case, the same person, James Jr., is asserting the debt and is the administrator. The value of the debt has not been established. There have not been any hearings to determine the validity of the claim or the amount. The claim was not instituted prior to the death of Joan Lee. The claim, if successful, will result in a reduction of transfer inheritance taxes. If the claim is paid, it would be paid to the administrator, as well as his two children. All of these factors weigh in favor of rejecting the claim as a debt of the estate.

## C. **Future Refund Claim.**

Although James, Jr., as administrator, has not established that a portion of the estate is deductible on the basis of the waste claim, that does not mean that the estate cannot seek a refund in the future. A request for a refund must typically be made within three years of the date of payment. N.J.S.A. 54:35-10. Prior to 1956, the section provided in pertinent part:

> all applications for repayment of such tax
> shall be made within 3 years from the date of
> such payment.

> [Ibid.]

In 1956, an amendment changed the law as follows:

> all applications for repayment of such tax
> shall be made within 3 years from the date of
> such payment, or from the date of the final
> determination of a court of competent

-22-

> jurisdiction which establishes the fact that the decedent had no legal or equitable interest in the property on which the tax was assessed and erroneously paid, whichever is later; provided, however, no refund shall be made where such final determination occurs more than 20 years after the date of death of the decedent.

[Ibid.]

Stated succinctly, the law was amended in 1956 to expand the refund period to be 3 years of determination by a court, so long as the determination is within 20 years. Id.

In the case at hand, there has not been a final determination of a court of competent jurisdiction that establishes the waste claim. The evidence presented thus far is insufficient to establish a claim. The estate has to determine whether it is worth pursuing an action. In light of the foregoing, James Jr. and the estate have to determine both the necessity and the potential cost of a substitute administrator to cure the conflict of James Jr. as administrator and creditor, separate counsel for both the substitute administrator and James Jr., and expert appraisal reports. Upon final determination of a court of competent jurisdiction, a timely refund claim will need to be made. The Director, and ultimately this court on appeal if necessary, can then evaluate the claim considering the factors and concerns mentioned in this opinion.

## IV. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of the Director and the matter is dismissed.