**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4200-16T3

DRIVE NEW JERSEY INSURANCE
COMPANY,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

LOUIS A. D'ALESSIO, JR.,
D'ALESSIO'S BAGEL EXPRESS,
ADOLINA LOPEZ AVILA (as
Administrator ad Prosequendum
and General Administrator of
the Estate of Pedro Avidan
Reyes Tejada),

    Defendants,

and

SENTINEL INSURANCE COMPANY
and/or THE HARTFORD,

    Defendant-Respondent/
    Cross-Appellant.

_____

Argued June 5, 2018 — Decided July 9, 2018

Before Judges Reisner, Mayer, and Mitterhoff.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-4201-15.

Daniel J. Pomeroy argued the cause for appellant/cross-respondent (Pomeroy Heller & Ley, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the briefs).

Gerald D. Wixted argued the cause for respondent/cross-appellant (Dilworth Paxson, LLP, attorneys; Gerald D. Wixted, on the briefs).

PER CURIAM

This appeal concerns an attempt by plaintiff Drive New Jersey Insurance Company (Drive) to disclaim $485,000 in coverage to its insured, and instead reduce coverage to $15,000 pursuant to a policy exclusion, after Drive had begun defending the insured in a wrongful death suit. Drive admittedly did not provide the insured with a reservation of rights (ROR) letter, before it undertook his defense. Thereafter, Drive filed a declaratory judgment (DJ) action against its insured, the insured's employer, the employer's insurer Sentinel Insurance Company (Sentinel), and the deceased accident victim's estate. Sentinel counterclaimed for declaratory and other relief. The trial court granted summary judgment against Drive, and subsequently denied Drive's reconsideration motion.[1]

---

[1] The wrongful death suit was not settled until after the trial court denied the reconsideration motion. That history illustrates the difficulty of settling litigation when there is uncertainty about the litigants' insurance coverage.

A-4200-16T3

Drive now appeals from an April 15, 2016 order, granting Sentinel's summary judgment motion, dismissing Drive's DJ complaint against all defendants, declaring that Drive must provide primary coverage and a defense to its insured and the employer, with $500,000 in coverage, and requiring Drive to reimburse Sentinel's defense costs in the underlying wrongful death suit. Drive also appeals from an April 15, 2016 order denying Drive's summary judgment motion. Lastly, Drive appeals from an April 18, 2017 order denying its motion for reconsideration. Sentinel cross-appeals from a May 3, 2017 order denying its motion for a counsel fee award for defending against the DJ action.[2]

I

We review a summary judgment order de novo, employing the Brill[3] standard. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). We review a trial court's decision to grant or deny a reconsideration motion for abuse of discretion. See Hinton v. Meyers, 416 N.J. Super. 141, 148 (App. Div. 2010). We will

---

[2] Drive paid Sentinel approximately $23,000 in reimbursement for defense costs for the wrongful death action. Sentinel sought approximately $40,000 in additional fees for litigating the coverage case.

[3] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

A-4200-16T3

not disturb a trial court's decision of a counsel fee motion, except in the rarest case and only if we find a clear abuse of discretion. Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

Finding no legal errors in the summary judgment decisions and no abuse of discretion in the denial of reconsideration, we affirm the April 15, 2016 and April 18, 2017 orders for the reasons set forth in this opinion.

On the cross-appeal, we affirm the May 3, 2017 order for the reasons stated by the trial court. No further discussion of the fee issue is warranted. R. 2:11-3(e)(1)(E).

II

Before addressing the legal issues pertaining to the summary judgment and reconsideration motions, we summarize the most pertinent evidence. The case arose from an accident in which Drive's insured, Louis A. D'Alessio, Jr., struck and killed a pedestrian. At the time, D'Alessio was using his personal vehicle to deliver bagels for his employer, Bagel Express. The pedestrian's estate sued D'Alessio and Bagel Express.

Bagel Express had a $2,000,000 policy through Sentinel, which covered its employees. D'Alessio had a $500,000 policy from Drive, covering his personal vehicle. The Drive policy had an exclusion for use of the vehicle to make business-related deliveries. The exclusion stated that, if the vehicle was used

for that purpose, the coverage was reduced to the minimum allowed by law, or $15,000. Eventually, Drive would seek to invoke the policy exclusion, but on the summary judgment record, Drive did not do so until after it undertook to defend D'Alessio in the wrongful death lawsuit.

The wrongful death complaint was filed on February 12, 2015. In April 2015, Drive retained counsel for D'Alessio, and the attorney filed an answer on D'Alessio's behalf on April 27, 2015. On July 16, 2015, Drive filed the DJ action against D'Alessio, Bagel Express, Sentinel, and the pedestrian's estate. Drive did not seek a stay of the wrongful death litigation, and that lawsuit continued, with the Drive-retained attorney representing D'Alessio.

After discovery closed in the DJ action, Sentinel moved for summary judgment. The summary judgment record discloses that Drive never asserted that it served D'Alessio with a ROR letter. In fact, during discovery, Sentinel's attorney asked Drive's attorney multiple times to produce a ROR letter if Drive had sent one. Drive's attorney avoided directly answering the discovery demand. Finally, in response to Sentinel's summary judgment statement of material facts, Drive admitted that no "formal" ROR letter was ever sent. That response did not cite to record evidence of any ROR letter, formal or informal, or any attempt to

disclaim coverage or invoke the policy exclusion, other than the DJ complaint itself.

At the motion argument on April 15, 2016, Drive's attorney did not claim that the company ever served its insured with a ROR letter. The attorney instead contended that a ROR letter was not required. The motion judge noted that Drive had not raised that argument in its motion papers but was asserting the contention for the first time at oral argument. The judge granted summary judgment, concluding that, absent timely service of a ROR letter, Drive could not sue its insured to disclaim coverage, after commencing representation of the insured in the underlying wrongful death action.

After the trial judge granted summary judgment in favor of Sentinel, Drive filed what it characterized as a reconsideration motion, seeking to re-open discovery to permit an amendment to its responses to Sentinel's motion to produce. In other words, after stalling discovery for months, Drive finally sought to produce a letter invoking the policy exclusion. The motion sought to place several documents before the court, only two of which are pertinent here. The first document, a letter dated October 30, 2013, was from Mr. Orlando, a Drive claims specialist, advising D'Alessio that he had $500,000 in coverage. The letter also stated that, because it was possible that damages might be awarded against

D'Alessio in excess of that amount, he "may wish to retain a personal attorney at [his] own expense regarding this potential excess exposure."

The second document was an August 1, 2014 letter from Orlando to Andrew Statmore, an attorney who had represented D'Alessio at a March 5, 2014 examination under oath (EUO). The August 1, 2014 letter stated that Drive's "coverage investigation" revealed that D'Alessio was using his vehicle for business purposes, and invoked the policy exclusion for use of a vehicle for retail or wholesale delivery of food. The letter noted the stepdown clause, and stated that "[a]ny claims for damage resulting from this accident, other th[a]n those which fall within the minimum liability coverage [$15,000] are hereby denied." The letter advised that Drive would "proceed with the investigation and resolution of all claims which fall within" that liability coverage.

The letter was unsigned, but Orlando stated that he "[could] certify" that he prepared it and sent it. Orlando explained that Drive mistakenly failed to provide the letter to its attorneys, thus leading to the attorneys' failure to provide the documents to Sentinel or to the court.

In opposition, Sentinel's attorney produced documents illustrating his extensive efforts to obtain discovery from Drive, and Drive's repeated failure to provide discovery. In particular,

Drive refused to provide the defense file relating to the wrongful death action, which according to Orlando, was the file containing the August 1, 2014 letter.[4]

Sentinel also provided the court with a copy of Statmore's retainer letter with D'Alessio, clearly stating that Statmore was only retained to represent D'Alessio at the EUO and "that representation shall end after the formal statement is concluded." The retainer further specified that Statmore was not retained to represent D'Alessio in connection with any denial or disclaimer of coverage, should that occur after the EUO. The EUO took place on March 5, 2014. Nothing in the transcript of the EUO presented to us reflects that Drive's attorney put Statmore or his client on notice that there was a coverage issue. His introductory explanation to D'Alessio of the EUO's purpose did not mention coverage.

On July 22, 2016, the motion judge wrote to the attorneys that he was scheduling a testimonial hearing to resolve factual issues pertinent to the reconsideration motion. Those issues included whether D'Alessio received the August 1, 2014 letter,

---

[4] Another Drive claims specialist, Ms. Giacobbe, explained that when she took over the coverage file, it was empty; all the pertinent documents were in the wrongful death file, which was maintained by Orlando. She claimed that company policy precluded her and Orlando from sharing files.

whether Statmore continued to represent D'Alessio after the EUO, the circumstances under which Orlando allegedly prepared and sent the letter, and how the letter "finally came to be discovered" eight days after the court granted summary judgment. In response, Sentinel's attorney sent the court a certification from Statmore, confirming that his representation of D'Alessio ended immediately after the March 5, 2014 EUO. Statmore also stated his belief that he told Drive's attorney at or around the time of the EUO that his representation was limited to the EUO. Statmore further stated that the August 1, 2014 letter was incorrectly addressed, and he had no record or recollection of ever having received it.

The trial court had some difficulty scheduling the testimonial hearing. Meanwhile, the wrongful death case was on the trial list, and the coverage issue continued to be uncertain due to the reconsideration motion. Finally, the court set a peremptory date of April 18, 2017 for the hearing. On that date, Drive's counsel conceded that one of his witnesses, Mark Jones, the attorney who represented Drive at the EUO, had no recollection of anything relevant to the hearing.[5] Further, although the

---

[5] At a previous conference, in November 2016, Drive's counsel represented to the court that Jones told Statmore that there might be a coverage issue. However, on April 18, 2017, Drive's counsel told the court Jones remembered nothing pertinent. Drive's appellate brief now asserts — inaccurately — that Jones was

hearing was scheduled for 10:30 a.m., Statmore was not present to testify, apparently because Drive's attorney had told him the hearing would last all day and Statmore planned to appear at 2:00 p.m. D'Alessio had very recently been subpoenaed, but told Drive's attorney that he could not appear on short notice, and he and his family were scheduled to be on vacation.[6] Drive's attorney stated that Orlando was unavailable due to a stomach ailment. In short, Drive was not prepared to proceed with the peremptory hearing, at which Drive had the burden of proof.

In a brief oral opinion, the judge denied the reconsideration motion. The judge first noted that Drive had not shown that there were exceptional circumstances or that the proffered new evidence could not have been located earlier through diligent effort. The judge concluded that, even if Drive had been able to prove that Statmore received the letter, at a time when he was still representing D'Alessio, the document was not a reservation of rights letter. In fact, Drive's attorney admitted it was not a

---

"available in court" at the April 18, 2017 hearing date but was unfairly precluded from testifying.

[6] We gather from the transcript that D'Alessio was served with the subpoena on the previous Thursday, which was the day before Good Friday. The hearing was on April 18, 2017, which was the Tuesday after Easter Sunday.

ROR letter. The judge reasoned that Drive was simply attempting to rehash its earlier argument that a ROR letter was not required.

### III

We begin our legal analysis by addressing the summary judgment motion. We agree with the motion judge that in the circumstances presented, Drive could not undertake the defense of its insured, without giving the insured advance notice that Drive intended to deny most of the coverage the policy provided and that it would defend under a reservation of that right. Even if a formal ROR letter were not required, an insurer must timely invoke a policy exclusion. See Griggs v. Bertram, 88 N.J. 347, 363-64 (1982). The undisputed summary judgment evidence established that Drive neither timely invoked the exclusion nor served its insured with a reservation of rights letter.

We find no merit in Drive's argument that a ROR letter was not required because Drive was not denying coverage but was only reducing the coverage — from $500,000 to $15,000. Drive's argument is based on an unduly narrow view of the purpose of the ROR letter requirement. It is clear from cases as early as Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114 (1962), that a carrier may not control the defense, without notice to the insured of a reservation of the insurer's right to disclaim coverage, and then eschew its obligation to provide the coverage.

Relying on <u>Burd v. Sussex Mutual Insurance Co.</u>, 56 N.J. 383 (1970), Drive argues for a narrow construction of the obligation, contending that it only applies where the carrier's control of the defense could influence the outcome of the coverage obligation. First of all, <u>Burd</u> did not involve a reservation of rights, but an insurer's refusal to defend its insured. However, <u>Burd</u> recognized that

> <u>if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay</u>, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense.
>
> [<u>Id.</u> at 389 (emphasis added).]

Drive focuses on the second phrase in the above-quoted language while downplaying the first phrase. We conclude that a carrier that intends to defend its insured in either situation described in the quote above has an obligation to serve a reservation of rights letter.

<u>Burd</u> does not hold to the contrary. <u>Burd</u> focused on the possibility of a carrier litigating the tort action in a way that would prejudice the insured, because that was the issue in the case. <u>Burd</u> did not hold that that was the only situation in which a ROR letter was required. <u>Burd</u> was not about an insurer's failure to serve a ROR letter. Instead, <u>Burd</u> addressed how and when an

insurer could obtain a declaration of its obligation to provide coverage. However, <u>Burd</u> reaffirmed the following basic principles:

> <u>[I]f a carrier defends an action in the face of a coverage issue, the carrier must pay the judgment (unless the insured expressly agreed to a reservation of that issue),</u> and if the carrier does not defend the tort claim because a plaintiff's verdict will not resolve the coverage problem in the insured's favor or because the carrier cannot defend with complete fidelity to the insured's sole interest, then the carrier may be heard upon the coverage issue in a proceeding upon the policy. And of course if the carrier does not defend, it will have to reimburse the insured for the cost of defense if the tort judgment is held to be within the covenant to pay.
>
> [<u>Id.</u> at 394 (emphasis added).]

In <u>Griggs</u>, the Court also recognized the requirement to issue a reservation of rights letter. The obligation applies to policy exclusions as well as claims of noncoverage.

> Under certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a particular claim against its insured despite a clear contractual provision excluding the claim from the coverage of the policy. The strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a lawsuit based upon a claim against its insured. If it does so with knowledge of facts that are relevant to a policy defense or to a basis for noncoverage of the claim, without a valid reservation of rights to deny coverage at a later time, it is estopped from later denying coverage.

[Griggs, 88 N.J. at 355-56.]

In Griggs, the Court focused on the insurer's related obligation to timely invoke any policy exclusion, even before litigation ensues:

> We therefore conclude that where, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later denying coverage under the insurance policy in the event a legal action is subsequently brought against its insured.

[Id. at 363-64.]

Accordingly, we find no merit in Drive's contention that it did not need to serve D'Alessio with a ROR letter. Drive's related assertion — that D'Alessio had no right to obtain counsel of his own choosing — is belied by Drive's first letter to D'Alessio, advising him that his $500,000 coverage might be inadequate, and he might want to retain his own attorney to represent him with respect to any possible excess liability. Drive's citation to Sussex Mutual Insurance Co. v. Hala Cleaners, Inc., 75 N.J. 117, 126 (1977), is inapposite, because in that case the insurer made its position known before the underlying tort lawsuit was filed and quickly obtained a stay of the tort lawsuit. In this case, Drive continued to represent D'Alessio in the wrongful death suit,

while also suing him in the DJ action, without his agreement to a reservation of rights.

We find no abuse of the trial court's discretion in denying the reconsideration motion. A belated attempt to produce evidence on a reconsideration motion, after the court has rendered judgment, requires a convincing explanation why the evidence could not have been produced earlier. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462-63 (App. Div. 2002).[7] Likewise, a motion for relief from a judgment based on newly discovered evidence, under Rule 4:50-1(b), requires a showing that the evidence could not have been obtained earlier "by the exercise of due diligence." DEG, LLC v. Township of Fairfield, 198 N.J. 242, 264 (2009) (citation omitted).

We do not fault the trial judge for being skeptical about Drive's sudden production of the documents a few days after the court granted summary judgment. It was not unfair to require a testimonial hearing, or to cancel the hearing when Drive was not prepared to proceed with its witnesses. At that point, the wrongful death case was still pending, and the settlement of that case — which would provide compensation to the estate of the man

---

[7] Drive's merits brief does not even address the standards for a reconsideration motion, instead citing cases applicable to requests for extensions of discovery.

who was killed in the accident — was being delayed due to uncertainty about insurance coverage. The summary judgment record supported the judge's first decision, and there was no abuse of discretion in declining to reopen the judgment.

We also agree with the trial judge that, even if the August 1, 2014 correspondence had been properly addressed, mailed, and received by an attorney who still represented D'Alessio (none of which facts were proven), it was not a reservation of rights letter. See Sneed v. Concord Ins. Co., 98 N.J. Super. 306 (App. Div. 1967). In fact, Drive's counsel admitted that it was not a ROR letter and argued that no ROR letter was required.

Finally, we briefly address Drive's argument that Sentinel had no standing to raise Drive's failure to serve D'Alessio with a ROR letter. Drive's brief in chief relies solely on United States Casualty Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937), a case that is not on point here. We deem the issue inadequately presented by the appellant. However, we add that Drive sued Sentinel to resolve the coverage issue, and, particularly given the then-pending wrongful death suit, both insurers had an interest in the amounts of coverage available to their insured, D'Alessio. In those circumstances, Sentinel had standing to raise the reservation of rights issue. See Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs., 425 N.J. Super. 305, 320-21 (App.

Div. 2012), aff'd, 215 N.J. 409 (2013); Marshall v. Raritan Valley
Disposal, 398 N.J. Super. 168, 177 (App. Div. 2008).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION